# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
Sep 25 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ VeronicaCota    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No.   24MJ8846
Black Naomicase Cellphone )
Model: Unknown )
Seized as FP& F: 2024255400021301 Item: 006 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-5, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by   telephone   *(specify reliable electronic means)*.

Date:   09/24/2024

*Judge's signature*

City and state:   El Centro, California         HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:** Black Naomicase Cellphone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 006
Seized from Benjamin LOPEZ-Ramirez
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 7, 2024, up to and including September 7, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**      Blue Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 002
Seized from Edwing Yoel AVILA-Barrios
**(Target Device #1)**

**A-2:**      Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 003
Seized from Jefry Josue AMADOR-Gomez
**(Target Device #2)**

**A-3:**      Black Senwa Cellphone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 004
Seized from David Santiago SANCHES-Chavez
**(Target Device #3)**

**A-4:**      Blue Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 005
Seized from Miguel ALVAREZ-Concileon
**(Target Device #4)**

**A-5:**      Black Naomicase Cellphone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 006
Seized from Benjamin LOPEZ-Ramirez
**(Target Device #5)**

as further described in Attachments A-1 to A-5, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Edwing Yoel AVILA-Barrios (AVILA) and Jefry Josue AMADOR-Gomez (AMADOR) for transportation of illegal aliens Miguel ALVAREZ-Concileon (ALVAREZ) Benjamin LOPEZ-Ramirez (LOPEZ), and David Santiago SANCHES-Chavez (SANCHES) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from AVILA, AMADOR, and the Material Witnesses on or about September 6, 2024, incident to the arrest of AVILA, AMADOR, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.  I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the

illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

     d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

     e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

     f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On September 5, 2024, the Calexico Station's Anti-Smuggling Unit (ASU) was conducting surveillance approximately 25 miles east of Calexico Port of Entry. In this area, the border between the United States and Mexico is clearly marked by a 30-foot-tall metal fence that separates the United States from Mexico. Approximately one quarter mile north of the border fence is the All-American Canal (AAC), a water way which spans approximately 50 feet wide and flows westbound parallel to the border. The area north of the AAC is mostly open desert with scattered shrubs throughout. Interstate 8 (I-8) runs parallel to the AAC. I-8 is constantly utilized as a smuggling route to circumvent operational Border Patrol Checkpoints.

11. At approximately 10:18 p.m., BPA Pena, an ASU member assigned to the Radio Video Surveillance Systems (RVSS), observed four suspected illegal running towards the southern canal bank of the AAC. BPA Pena informed ASU members via the service radio of this traffic. BPA Pena relinquished RVSS duties to BPA F. Lopez, an agent assigned to RVSS. BPA Pena responded to the ongoing traffic. BPA Lopez continued to update ASU members as the four suspected illegal aliens continued north through the desert.

12. BPA W. Schwaderer, an ASU member operating an unmarked service vehicle and wearing plain clothes attire, was located on the northern side of Interstate 8 (I-8) and Highway 98, also known as the "East Y". BPA Lopez observed the four suspected illegal

aliens run towards I-8. BPA Schwaderer observed the four suspected illegal aliens reach the southern shoulder of I-8. BPA Lopez informed ASU members that the four suspected illegal aliens were standing by on the shoulder of I-8.

13. At approximately 10:36 p.m., BPA Schwaderer observed a vehicle, later identified as a 2001 Toyota Camry, tapping its brakes as it traveled eastbound on I-8. BPA Schwaderer observed the Toyota slow down and stop directly north of the location of the suspected illegal aliens. BPA Lopez observed the four suspected illegal aliens run towards the Toyota and board the Toyota. The Toyota then merged onto I-8 and began to travel eastbound. The Toyota made a U-turn through the median of I-8, changing directions to westbound I-8. BPA J. Chrisley who was at the East Y overpass, slowly merged onto the westbound lanes of I-8 about one quarter of a mile behind the Toyota. BPA Chrisley relayed this information via the service radio.

14. At approximately 10:39 p.m., BPA Schwaderer caught up to the Toyota and was able to relay the Toyota's license plate to El Centro Sector Communications (840). The Toyota was registered to Edwing Yoel AVILA-Barrios, the driver in today's alien smuggling case. BPA Chrisley maintained constant visual of the Toyota as it traveled westbound.

15. At approximately 10:44 p.m., BPA Chrisley and BPA P. Durazo activated their emergency lights and siren signaling the Toyota to stop. BPA Chrisley saw the Toyota slow down and come to complete stop. Shortly after stopping, BPA Chrisley observed four individuals run out of the Toyota and abscond north into the desert.

16. BPA Durazo quickly approached the driver side of the Toyota and ordered the driver to exit the vehicle, to which he complied. BPA Durazo detained the driver, later identified as Edwing Yoel AVILA-Barrios. BPA Durazo questioned AVILA regarding his citizenship. AVILA stated he is a United States citizen.

17. BPA Durazo approached the front seat passenger and ordered the passenger to exit the vehicle. The front seat passenger was later identified as Jefry Josue AMADOR-Gomez. BPA Durazo questioned AMADOR regarding his citizenship. AMADOR stated

6

he is a United States citizen. It was later revealed in a post arrest interview that AMADOR is a Honduran citizen that does not have the legal documents to be present in the United States.

18. On September 6, 2024, at approximately 12:05 a.m., BPA Durazo followed a set of footprints that led him to Miguel ALVAREZ-Concileon, one of the illegal aliens that was involved in the alien smuggling case. BPA Durazo questioned ALVAREZ regarding his citizenship. ALVAREZ stated that he is a citizen of Mexico without the proper documentation to be in the United States legally. BPA Durazo placed ALVAREZ under arrest for being in the United States illegally. BPA Durazo informed agents in the area searching for the suspected illegal aliens that one out of the four has been apprehended via service radio.

19. At approximately 12:35 a.m., BPA Chrisley and BPA D. Diaz, an agent assigned to the All-Terrain Vehicle (ATV) unit, were following two sets of footprints that came from the location of the Toyota. BPA Chrisley and BPA Diaz came across two individuals whose footprints matched the ones they were following. The individuals were later identified as Benjamin LOPEZ-Ramirez and David Santiago SANCHES-Chavez, two of the illegal aliens that were involved in the alien smuggling case. BPA Chrisley questioned LOPEZ and SANCHES regarding their citizenship. Both LOPEZ and SANCHES stated they are citizens of Mexico without the proper documentation to be in the United States legally. BPA Chrisley placed LOPEZ and SANCHES under arrest for being in the United States illegally.

20. The fourth suspected illegal alien that absconded into the desert was never found. At approximately 3:00 a.m., AVILA and AMADOR were placed under arrest for 8 USC 1324 Alien Smuggling. AVILA, AMADOR and the three illegal aliens were transported to the Calexico Border Patrol Station for further processing.

21. AVILA stated he came to El Centro, California to pick up some people. AVILA stated his friend, AMADOR, found a job advertisement. AVILA stated AMADOR called the number on the advertisement and accepted the job offer. AVILA stated he was

offered $500.00 USD per person. AVILA stated the location of the individuals needing to be picked up was sent to AMADOR via cellphone. AVILA stated he drove to the location he was instructed to drive to and once he arrived at the location, he pulled over on the side of I-8 and the individuals entered the rear passenger area of his vehicle. AVILA stated that AMADOR was on the phone with the smuggler.

22.   Material Witness ALVAREZ stated that he was born in Mexico. ALVAREZ stated he came to Mexicali with the intent to be smuggled into the United States illegally for $10,000.00 USD. ALVAREZ stated that a grey sedan was going to pick them up. ALVAREZ positively identified Edwing Yoel AVILA-Barrios as the driver of the vehicle. Material Witness LOPEZ stated that he was born in Mexico. LOPEZ stated he came to Mexicali with the intent to be smuggled into the United States illegally for $10,000.00 USD. Material Witness SANCHES stated he was born in Mexico. SANCHES stated he did not have the legal documents to be present in the United States (U.S.) SANCHES stated he came to Mexicali with the intent to be smuggled into the U.S. illegally for $12,000.00 USD.

23.   During a search incident to the arrest of AVILA, AMADOR, and the Material Witnesses, five cellphones were found: a blue Apple iPhone (Target Device #1) was located on AVILA's person in his front left pocket and AVILA claimed ownership. A black Apple iPhone (Target Device #2) was found on the passenger side floorboard of the Toyota and AMADOR claimed ownership of this cellphone. A black Senwa cellphone (Target Device #3) was found in SANCHES' front right pocket and SANCHES claimed ownership of this cellphone. A blue Motorola cellphone (Target Device #4) was found in the right front pocket of ALVAREZ's pants and ALVAREZ claimed ownership of this cellphone. A black Naomicase cellphone (Target Device #5) was found on LOPEZ's person in his right front pocket and LOPEZ claimed ownership of this cellphone. All cellphones were claimed by their respective owner and seized as evidence.

24.   I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally,

co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on August 7, 2024, up to and including September 7, 2024, the day after the arrest of AVILA, AMADOR, and the Material Witnesses.

## METHODOLOGY

25. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic

analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

28.     Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that AVILA, AMADOR, and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by AVILA, AMADOR, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 24th day of September, 2024.

_____ 1:55 p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**   Blue Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 002
Seized from Edwing Yoel AVILA-Barrios
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-2:**</u>    Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 003
Seized from Jefry Josue AMADOR-Gomez
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**   Black Senwa Cellphone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 004
Seized from David Santiago SANCHES-Chavez
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**     Blue Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 005
Seized from Miguel ALVAREZ-Concileon
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**   Black Naomicase Cellphone
Model: Unknown
Seized as FP& F: 2024255400021301 Item: 006
Seized from Benjamin LOPEZ-Ramirez
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 7, 2024, up to and including September 7, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.